# In the United States Court of Federal Claims

No. 13-331C
(Originally Filed: May 23, 2013)
(Reissued: June 6, 2013)[1]

* * * * * * * * * * * * * * * * * * * * * *
SOLUTIONS BY DESIGN ALLIANT JOINT VENTURE, LLC,

*Plaintiff*,

v.

THE UNITED STATES,

*Defendant*,

v.

AAC, INC.,

*Intervenor*.

* * * * * * * * * * * * * * * * * * * * * *

ORDER

This is an action by a disappointed bidder who seeks an order directing the imposition of a stay pursuant to the Competition in Contracting Act, 31 U.S.C. § 3553 (2006) ("CICA"). Plaintiff, Solutions by Design Alliant Joint Venture, LLC ("Alliant"), bid on a task order issued by the General Services Administration ("GSA") under its GSA Alliant Small Business Governmentwide Acquisition Contract for various information technology services. The award was made to intervenor, AAC, Inc. Plaintiff contends that the award was made on May 2, 2013, and that it timely protested at the Government Accountability Office ("GAO") on May 9, 2013, thereby triggering the automatic stay provision of CICA. Defendant and intervenor contend that the award was made on February 27, 2013, and that the May 9

[1] This order was originally issue under seal. The parties did not propose any redactions. Minor editorial changes were made.

protest at GAO is more than ten days after the award and that the automatic stay provision is therefore not triggered.

Currently before the court are plaintiff's motion for a temporary restraining order and its motion for a preliminary injunction. The motions are fully briefed, and we heard oral argument on May 22, 2013. For reasons we explain below, those motions are denied.

BACKGROUND

The task order at issue will replace an expiring task order issued in 2007 under a different governmentwide acquisition contract. One of the members of plaintiff's joint venture, Comtech, LLC, is a subcontractor on the incumbent contract. On February 22, 2013, the task order was awarded to AAC, Inc. on a best value basis.

Plaintiff filed a protest at GAO on March 5, 2013, which triggered an automatic stay of performance of the contract as mandated by CICA. 31 U.S.C. § 3553(d)(3)(A). On April 25, 2013, GSA notified GAO and Alliant that it had discovered flaws in its evaluation, unrelated to the protest grounds, and would take corrective action. Administrative Record ("AR") 145. The GAO attorney handling the protest responded with the following question to GSA: "With regard to your email below, I just want to confirm that the agency's reevaluation of the four proposals will result in a new source selection decision (which may, or may not, result in contract award to AAC, Inc.)." AR 146. GSA responded that "[t]he prior Source Selection Decision (SSD) was based, in part, on a flawed evaluation, so the new evaluation will necessitate a new SSD." AR 147.

Alliant objected to GAO dismissing its protest on the grounds that the corrective action would do nothing to correct the errors that it alleged occurred during the first evaluation. GAO nevertheless dismissed the protest as academic and stated in its dismissal that, "[a]lthough [Alliant] objects that the corrective action does not address specific aspects of its protest, the agency is going to re-evaluate proposals and make a new source selection decision. Thus, there is no final decision from the agency for our Office to review." AR 148.

On May 2, 2013, Alliant received a copy of an email from the Contracting Officer ("CO") to the incumbent. It notified the incumbent that,

in view of the GAO dismissal of Alliant's protest, the stay had been lifted and that GSA intended to proceed with the award previously made to AAC: "we have been advised that we can proceed (understanding the risk) with performance/transition under that contract." AR 149. Alliant promptly filed a new protest at GAO on May 9, 2013, premised on the assumption that GSA's intent to proceed with the award to AAC amounted to a new contract award. GAO notified GSA that the protest was filed. The United States filed a motion to dismiss the latest GAO protest. That motion is still pending.

Alliant inquired of GSA on May 9, 2013, whether it had immediately stayed performance pursuant to the CICA stay provisions due to the newly filed protest. GSA responded the same day:

> GSA acknowledges the protest filing at GAO. As the protest is more than 10 days after award, the CICA stay does not apply. The agency will be filing a dispositive motion next week.
>
> As the court in Unisys v US noted 'The agency only has a duty to suspend performance under Section 3553 if it receives notice from GAO within ten calendar days of contract award or within five days after debriefing of an unsuccessful offeror.'
>
> Award to ACC was signed February 27th, 2013.

AR 199.

Alliant filed its complaint here on May 14, 2013, protesting GSA's decision not to implement the CICA stay and asking for an injunction prohibiting performance of the contract until the resolution of the protest at GAO. Plaintiff filed motions for a temporary restraining order and a preliminary injunction contemporaneously with its complaint. Defendant has responded to those motions, and we heard the oral argument on May 22, 2013.[2]

## DISCUSSION

We have jurisdiction "to render judgment on . . . any alleged violation of a statute or regulation in connection with a procurement or a proposed

---

[2] Defendant filed the AR on May 17, 2013.

procurement." 28 U.S.C. § 1491(b)(1) (2006). We review agency action in accordance with the APA's arbitrary and capricious standard, *id.* § 1492(b)(4), which is found under 5 U.S.C. § 706 (2012). We will set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

A preliminary injunction may be granted only if the movant can show that: 1) it is likely to succeed on the merits; 2) it will suffer irreparable injury; 3) the balance of hardships favors the movant; and 4) an injunction will not be contrary to the public interest. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). In this circuit, special emphasis is placed upon the first two factors. *See id.* ("[A] movant cannot be granted a preliminary injunction unless it establishes both of the first two factors."); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (stating that harm must be "likely in the absence of an injunction").

1. Likelihood of Success on the Merits

It is not disputed that GAO sent a notice to GSA of Alliant's May 9 protest. It is also clear that CICA dictates that, upon notice to the agency by GAO of the filing of a protest, "the contracting officer shall immediately direct the contractor to cease performance under the contract." 31 U.S.C. § 3553(d)(3)(A)(ii). Plaintiff's argument is thus that it was arbitrary, capricious, and in violation of the law for GSA to have ignored the notice.

Defendant contends that the prerequisite to the agency's obligation to initiate a stay is that the protest be timely. CICA provides that the protest must be filed within ten days of contract award or within five days of debriefing. *Id.* § 3553(d)(4). It is undisputed that, if GSA's directive to AAC of May 2 did not constitute a new award, as defendant argues, the May 9 protest would not trigger an automatic stay. Conversely, if the May 2 directive constituted a new award, then the agency erred in not staying AAC's performance. *See also* 48 C.F.R. § 33.104(c)(1) (2012).

Plaintiff's argument has a certain appeal. GAO dismissed the first protest on the plain understanding that GSA would issue a new source selection decision. Indeed it concluded that "there is no final decision from the agency for our Office to review." AR 148. Plaintiff contends that, if there is no final decision to review, then that can only be because GAO understood that the agency would promptly void the initial task order award. There is thus

a tension between the GAO's statement that "there is no final decision" and the agency's subsequent continuance of the original February award to AAC. GAO based its dismissal, over the objection of Alliant, on the fact that corrective action would result in a new source selection decision, plainly assuming that the earlier award to AAC would be cancelled at some point. And GAO rightly inquired of GSA whether the corrective action would result in a new source selection decision, because the corrective action was not based on any error alleged by Alliant in its first protest.

Defendant's response, however, points out the indisputable: neither GAO nor the agency actually voided the initial task order award. It therefore remained available, after the protest was dismissed and the stay lifted, to use as an interim vehicle for obtaining performance pending correction of the initial award. In order to accept plaintiff's argument, then, the court would have to "deem" the dismissal to have simultaneously voided the award. Only then could the May 2 email to AAC also be "deemed" to be a second award.

We agree with the defendant that this calls for the court to extrapolate beyond what the facts allow or the law requires. The GAO, of course, only has the authority to recommend action by the agency. *See* 31 U.S.C. § 3554(b)(1) (stating only that the Comptroller General "shall recommend"); *Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 809 F.2d 979, 995 (3d Cir. 1986). It's dismissal could not, therefore, have voided the initial award. While GSA perhaps should have clarified with GAO whether it was assuming that GSA would immediately void the initial award, we are not prepared to treat its failure to do so as a de facto cancellation of the award.

We are mindful that GAO has endorsed a practice of allowing an agency to proceed with an award on a temporary basis, pending corrective action. In *Del-Jen Education & Training Group*, B-401787.3, 2010 WL 1782371, at *1 (Comp. Gen. May 4, 2010), the original awardee was permitted to continue performing the contract despite the agency's stated intent to take corrective action after a protest. Del-Jen filed a subsequent protest, complaining that the awardee gained an unfair competitive advantage and should thus be excluded from the subsequent corrective action competition. *Id.* GAO denied the protest, stating that "an agency generally may permit the original awardee to continue performance (after the lifting of any applicable stay) pending the implementation of corrective action undertaken in response to the protest." *Id.* at *2. Despite a flawed procurement, the agency could continue the initial award and procure the goods or services in the interim

while it conducted its corrective action. GAO also noted that continuing with award to the original awardee did not constitute a new award decision.

Similarly, in *Cox & Associates CPAs, PC*, B-287272.3, 2001 WL 710130, at *2-3 (Comp. Gen. June 7, 2001), the protestor objected to proposed corrective action taken in an earlier protest, which was to cancel the solicitation and redo the procurement–a process the agency estimated would take a year; and it protested the decision of the agency to procure the services in the meantime from a different company via the GSA Federal Supply Schedule. GAO denied the protest, stating that, when the agency has immediate need of the services to be provided by the protested contract, it may procure them in the interim. *Id.* at *3.

Defendant is thus correct when it points to the absence in the record of a cancellation of the prior award or of a new award decision. Plaintiff is unable to point to anything indicating that an award decision was made on May 2, 2013. The only support for its argument is inartful language by the GAO in explaining why the protest was moot. The agency is still conducting its corrective action and will issue a new source selection decision in due course.[3] In the absence of any cancellation of the award, the clock for purposes of section 3553(d)(3)-(4) started in February. Plaintiff's May 9 protest was therefore not within the ten day window afforded by section 3553(d)(4) for the application of the CICA stay. Plaintiff is thus unable to meet its burden to show a reasonable likelihood of success on the merits.

2. Whether Alliant Will Suffer Irreparable Injury

Attached to the complaint is an affidavit by Shailendra Sharma, President of Comtech, LLC, a subcontractor to the incumbent contractor, and part of the plaintiff joint venture. He states that Comtech is losing employees because of the award to AAC. Some are leaving altogether; some are moving to AAC. She is concerned that Alliant's ability to compete for the new award will be compromised if an injunction is not issued. We note that the government has filed an affidavit by the CO relying on presumably the same attrition of employees by the incumbent to show the harm it contends would

---

[3] During the status conference held on the record on May 22, 2013, agency counsel represented that GSA intends to complete its new source selection decision by May 31, 2013.

flow from further uncertainty in the procurement process.

During oral argument, representatives of the agency stated that it is GSA's intent to issue a new award decision by May 31, 2013. While plaintiff clearly has a financial stake in the outcome of the procurement, that sort of interest is not unique to the failure of the agency to put a stay in place. We do not believe it has established that a two week continuation of performance by AAC will cause it irreparable injury. Moreover, the precise remedy sought here–enforcement of an automatic stay–will become available to plaintiff in the event that GSA, after reevaluation of the procurement, proceeds with a final award to AAC. As defendant concedes, that decision would trigger a right in plaintiff to file a new protest at GAO.

Having found that the merits of the challenge favor defendant, and that plaintiff has not shown that it will suffer irreparable injury pending the agency's issuance of a final source selection decision, it is unnecessary to proceed to the third and fourth elements of injunctive relief.[4]

## CONCLUSION

Plaintiff has not shown that it is likely to succeed on the merits, or that it will suffer irreparable injury pending a new source selection decision. Accordingly, its motions for a preliminary injunction and a temporary restraining order are denied. Should plaintiff wish to pursue permanent injunctive relief, it is directed to file a motion for judgment on the administrative record on or before May 29, 2013. Defendant and intervenor shall then file their responses and cross-motions on or before June 5, 2013. Oral argument will be held shortly thereafter.

s/Eric G. Bruggink
Eric G. Bruggink
Judge

---

[4] We recognize that, if the plaintiff had persuaded us that it is likely to succeed on the merits, the public interest would incontrovertibly favor proceeding with an injunction to enforce the automatic stay.